IYM Technologies LLC v. RPX Corporation in Advanced Micro Devices 2019-1762, Mr. Stephen Senzo again. Good morning, Your Honors. With respect to Allen, the Board's conclusion of obviousness cannot stand because Allen, the primary reference in this action, fails to disclose enforcing new local constraint distances. The parties here agree that a constraint is a limit. The claim language requires enforcing a constraint, enforcing a limit. And the dispute here concerns what it means to enforce a limit. IYM proposes that in the context of the patent, enforcing a limit means compelling compliance with that limit such that violations of that limit are removed. In particular, finding solutions or adjustments to the layout that remove violations of a limit. The Board, and further, no matter what enforcing a limit means, it cannot encompass ignoring all violations of that limit as done by Allen, the primary reference. The Board found otherwise by determining the broadest reasonable construction of enforcing a constraint distance is solving a set of linear equations or constraints after incorporating the new local constraint distances. That simply fails to encapsulate what it means to enforce. We begin with the language of the claims. The term enforcing appears as part of the phrase enforcing said new local constraint distances. So we're enforcing a constraint or limit and a particular type, a distance. So there's limiting distances that must be placed on the layout, and that's what's being enforced. The choice of words can't be ignored in the claims. Enforcing is a verb. It generally connotates some meaning of compelling compliance. Consistent with IOM's construction, to enforce or compel compliance with a limiting distance is to ensure that violations of that distance are removed. The Board's finding that enforcing means solving problems that include constraint distances disregards the plain language of the claims. Plainly, not all solutions to equations that use constraint distances will result in compliance. Third, when looking at the claims, the enforcement specified by the claims must result in a solution that provides new coordinates for layout objects, and that's the last limitation. So in the context of the claim, you can't enforce on something where there's no violations because the result of enforcing must result in new coordinates for the layout objects. Now, with respect to the specification, the specification is consistent with the ordinary meaning of enforcing. Specification teaches that the enforcing step occurs when local constraint distances are violated, and that's column 4, line 12 through 16. The patent gives two examples of how the enforcing step may be performed, or two embodiments it refers to them as. And in both embodiments, the enforcing step removes violations. With respect to the first embodiment, for local constraint enforcement, it's in column 4, line 17 through 27, the enforcement embodiment, quote, is introduced by local constraint distances, and the way it enforces... So your view is for there to be enforcement, there must have been violations? Yes. We believe the plain language of the claim requires that because the last... Plain language doesn't specify one way or another. It says enforcing constraint distances, and what you refer to in the specification are preferred embodiments. You are correct, Your Honor, but limitation G, the last limitation of the claims, requires updating the coordinate variables of the layout objects according to the solutions obtained from enforcing. So the last limitation requires solutions to be obtained from enforcing, and if there's no violations, there's no solutions because otherwise the layout would just remain the same. So the claims themselves do require that there are violations, otherwise there would be no updating of the coordinate variables. I don't know. It doesn't make sense to me. I'll pick up on the hypothetical proposed by the opposing counsel. My children also had an 8 o'clock bedtime for most of their life. They all go up to bed. I don't have to punish anyone to make them do it. I believe I'm enforcing their 8 o'clock bedtime when they all go up and head to bed. Nobody violates the 8 o'clock bedtime, but I still believe I've enforced an 8 o'clock bedtime. Okay. Well, let's talk about the example. It's on page 48 and 49 of their response, and we're in the context of enforcing a constraint or a limit. So RPX argues that if at a particular location two components are 10 nanometers apart, we're going to apply a new local constraint distance of 15 nanometers to that location. Now, using the board's construction, if a formula is used with 15 nanometers as a minimum limiting distance, if those two components goes to 12 nanometers, so they go from 10 to 12, but they don't go to 15, is 15 nanometers being enforced as a minimum constraint distance, a minimum limit? We submit that's not a reasonable construction. No reasonable person in the context of the 012 patent or in general we believe would say that if you go to 12, you've enforced a minimum constraint distance of 15 nanometers at that location. The claims themselves, the specification, I'm sorry, refers to failed enforcement. Failed enforcement is exactly like their example. It's when you can't get to 15. And that's on column... Are you still making a claim construction argument or have you morphed into a substantial evidence argument? This is claim construction because the board's construction would encompass something as enforcement when you've only gone from 10 to 12. Because the board's construction says as long as you use that 15 nanometers in an equation or constraint, whatever your result is, you've necessarily enforced because you've gotten a solution using a constraint. Whereas our construction, and we submit that any reasonable construction requires actual enforcement of a limit. We don't... We just don't think it's reasonable to say a 15 nanometer minimum limiting distance has been enforced at a location where you've only moved things to 12 nanometers. And that's the problem with the board's construction and the problem with the board's... both the construction and the manner in which it was read on to Alan. And if we look at the second embodiment of the patent, it discusses the heuristic procedure and it talks about removing violations one at a time using the heuristic procedure. In the context of this patent, the removing violations is what the enforcement's about. The heuristic procedure is the way it's done. Not all heuristic procedures enforce or remove violations. Just like not all equations that happen to use constraints wind up enforcing those constraints. The actual solutions matter. Because if the solutions do not separate the components by the minimum required spacing, it can't be said that enforcement has occurred. The Claim 12 makes clear the difference between enforcement and unsuccessful enforcement. Claim 12 specifically refers to unsuccessful enforcement. What is unsuccessful enforcement if it's not removing violations? RPX gives no response to that. Unsuccessful enforcement is what happens when at certain locations you're unable to enforce. That's the plain language of Claim 12. And therefore, when you're unable to enforce, you have to do something else. Under the board's construction, as long as you've used the constraint in a formula, any solution you've got has enforced. And there would be no reason for Claim 12. In fact, Claim 12 would be illogical. Under the correct construction, RPX argues that LDR and GDR, which is disclosed in Allen, is enforced as a maximum constraint. The board found that RPX waived that argument below. And this is the final written decision on 32. Unless this court found that the board abused its discretion, under any construction where enforcing cannot encompass failed enforcing, reversal is required. RPX argues that the board did abuse its discretion, but we obviously disagree. In its reply below, RPX took the directly opposite position that it took in its petition. In its petition, RPX argued that the constraint for each of the multiple objects are space above segment is greater than or equal to LDR plus GDR. And this is its petition at page 43, the appendix at 183. That's a minimum constraint. It's saying the space above the segments have to be greater than or equal to LDR plus GDR. That was the only constraint it identified. After expert discovery, after we put in our response in reply, RPX came back and they did a 180. They said LDR plus GDR, it's not a minimum constraint as we argued in our position. It's a maximum constraint. Well, what they said in their position, petition is the space above segment has to be greater than or equal to LDR plus GDR. The board was not unreasonable in interpreting that as an argument concerning minimum constraint. RPX went on its petition at page 21, which is APX 161, to specify the design rules including both the GDRs and the LDRs of Allen's system determine the minimum size and spacing. So RPX told the board it's a minimum constraint. And just lastly, the board also found waiver based on the prejudice that would be to IYM and IYM didn't get a chance to address any of the new arguments with respect to either RPX's expert or its own expert. As such, the board's finding with respect to waiver was not an abusive discussion. Thank you. Thank you, counsel. We will save your time, Mr. Genta. Thank you. Thank you, your honors, and may it please the court. Before the board, IYM made only a single argument that it maintains on appeal. It argued that claim one's enforcing step should be narrowly construed as limited to removing violations and that Allen didn't meet the enforcing step because it allegedly didn't remove violations. The board properly rejected that narrow construction as too narrow under BRI and that was fatal to IYM below. If your honors agree that IYM's interpretation is unduly narrow, it should be fatal for IYM's appeal as well. So I wanted to start with the plain language of claim one. It describes constructing new local constraint distances and then enforcing said new local constraint distances. We know the solutions are generated from the enforcing step because the next step in the claim refers to solutions obtained from the enforcing step. But claim one never mentions violations of new local constraint distances, let alone limit the enforcing step to removing any violations. The inventor, of course, could have chosen to limit the enforcing step to removing violations, but he did not. Turning to the specification, it makes clear that IYM's interpretation is too narrow. Now, counsel focused a lot on our unsuccessful enforcement argument, but I want to begin with our argument about constraints that are not violated at all. So with respect to the preferred environment of figure two, specification says the original layout is, quote, likely to violate some of the local constraint distances, end quote. This makes clear that not all new local constraint distances need be violated by the original layout. This is undisputed. At appendix 2639, IYM conceded  that not all new local constraint distances may be violated. The figure two embodiment solves a system of equations, including all the new local constraint distances, not just those violated by the original layout. So that begs the question, are the new local constraint distances that are not violated by the original layout or are complied with in the new layout enforced? We would respectfully submit the answer is unquestionably yes. And this demonstrates that IYM's assertion that enforcing is limited to removing violations is unduly narrow because the broadest reasonable interpretation of enforcing must be broad enough to encompass the enforcing of those new local constraint distances that were not violated by the original layout. Well, in fact, wouldn't this claim not be infringed under the construction proposed by any system which doesn't violate the constraint distances? I'm sorry, Your Honor, could you restate the question? Their view is to enforce, you have to have violations and you have to remove the violators. So wouldn't it be true that this entire claim would never be infringed by a method that didn't actually have any violations? If their construction was correct, then the answer would be yes. But obviously we disagree that that's the correct construction. Now, in the final written decision at Appendix 12, the Board made the factual finding that enforcing must cover the scenario where there is no violation to remove at all. That finding is supported by substantial evidence. The above-discussed portions of the specification support that finding. And in addition, the Board cited the testimony of IOM's own expert. You started with, I think, what is a very good argument for you, which is not all constraints are going to be violated and they're nonetheless being enforced despite being violated. But what about the flip side, which is where he spent all of his time, which is what happens when there is a violation and there's no removal, no action taken? How are you enforcing something when there is, in fact, a violation and there is no action taken? So a couple of answers to that, Your Honor. I'm a pretty strict parent. My house, if you weren't here by 8 o'clock, trust me, there were consequences. And that amounted to enforcement. Right. So the first answer to the question is that the BRI of enforcing has to be broad enough to encompass the ones that are not violated at all. So their construction is too narrow if it excludes the enforcing of some new local constraint distances that are not violated at all. But with respect to the ones where the enforcement is unsuccessful, we would respectfully submit that unsuccessful enforcing is enforcing. So... Are you a parent, my friend? I am, Your Honor. Really? I am. If you did nothing to get your child in bed after 8 o'clock, did you successfully enforce their bedtime? Well, the place that I would challenge the premise that nothing is done. What the Figure 2 embodiment does is it seeks to find a solution that complies with all of these constraints. Now, it may be possible that it cannot find a solution that complies with all the constraints. That does not mean it did nothing. It sought a solution that complied with all of them, and in some circumstances, that enforcing step is unsuccessful in certain locations. But then you haven't enforced. You have unsuccessfully enforced. And the reason I say that, Your Honor, is Dependent Claim 12 introduces an additional step. It is a step that is performed after the enforcing step. It looks at the result of the enforcing step and says, let's take some action on the locations where the enforcing step was unperformed. So Dependent Claim 12 does not undo the enforcing step. The enforcing step, according to Claim 1, is a step that is performed in the aggregate on all of the said new local constraint distances that were constructed. Nothing in Dependent Claim 12 and the action of Kate can undo the performance of the enforcing step in Claim 1. But in addition, Your Honor, their construction is too narrow because, as I was just mentioning, the Board made the finding that there may not be any violations at all. So the broadest reasonable interpretation of enforcing needs to be broad enough to cover the circumstance where there are no violations. So it can't be unsuccessful in that enforcement. And as I was mentioning, the Board cited the testimony of IYM's own expert at 2408. He testified that step F, which was identified in the petition as the enforcing step, can be performed without removing violations because there may not be violations. And he said, quote, you can enforce without having a violation. So how would it affect Alan if the construction were that when, you know, in order to enforce when there are violations, those have to be removed? So that doesn't exclude the possibility you're enforcing when there's no violations, but when there are violations, there has to be an action taken. How would that affect the obviousness? Well, the construction has to be broad enough to uncover you can enforce a constraint that is not violated. I just said that, yes. Yeah, and so the construction just has to be broad enough to encompass that. And the reason that their construction is too narrow is because it excludes that, right? You're not answering my question. My question is what if the board's construction is wrong, but it is instead proper to construe it as enforcing. You're enforcing something when there's no violations. However, you're also only enforcing something if when there are violations, you're removing them. What I'm saying to you is tell me that we wouldn't have to vacate and remand because Allen, from a factual standpoint, still meets that definition, even if that is the correct definition. So the first answer is that the only issue that they raised below was based on this claim construction. It was sufficient for the board to resolve the party's dispute to reject their claim construction. They waived any other argument that enforcing could require anything or that Allen couldn't meet it. When I am asked on appeal to construe a term that I am limited to accepting their definition or your definition? No, Your Honor. Right. So they appealed claim construction. It's a question of law. I can construe the claim. If I construe the claim the way I'm proposing to you, what happens? I'm sorry, Your Honor. So could you just restate one more time what the construction would be? That enforcing requires taking action when there's noncompliance. I think that construction is too narrow for the reasons I said. It doesn't cover the circumstance where these constraints are not violated. Sure it does. Enforcing requires taking action when there's a violation. When there's a violation. When there's no violation, there's no action taken. And you're still enforcing. Right. I think the reason that I have a problem with that construction potentially being too narrow is in Allen. The board didn't address the question of whether those constraints are violated or not. We believe that in our reply, we demonstrated that what is actually constrained is the space above or below the track. So your problem is really that if I were to construe the claim that way, I'd have to vacate and remand and I couldn't just go ahead and affirm because the board didn't make any fact findings about Allen that would allow me to affirm if I changed the construction. Well, I believe the board did actually make the fact findings that would allow you to affirm. The board found that it was undisputed by the parties that what the track width routine in Allen does is that if the condition, space is greater than or equal to the LDR plus GDR, which is the constraint distance, if that condition is met, Allen will continue to make the track wider until the condition fails. So what we said in our reply is we didn't need to say whether this was a maximum or minimum constraint and whether there were violations removed. The notion of violations was only introduced by their claim construction. If we want to look at what's violated... If we don't agree with you on your defense here, would you say that it is moot if we affirm from the earlier appeal because that appeal involves all claims and this one doesn't? Certainly, Your Honor. I can give you the... I mean, we're aware of this court's case in Max Linear. That's 880F1373. We're in a similar circumstance. This court, two cases were on appeal from the board. This court said when it affirmed the board's finding in one of the cases as a matter of collateral estoppel, that became binding in the second appeal. So yes, if you affirm the Cody decision, it covers all the claims, you could find that this appeal is moot under this court's Max Linear decision. And the claim construction that we're discussing here is moot? Yes. Correct. Now, I wanted to briefly address their argument about at least some violations, Your Honors, because this argument was made in their reply at 10 to 14. It's a new argument that should not be considered, and if it is considered, it's wrong for a host of reasons. So IOM alleges that the enforcing step does not occur if the layout doesn't have any violations to remove. IOM explicitly walked away from this proposed construction before the board. So before the board, much like here, it was a bit of a moving target. They offered three different variants for their enforcing construction. Removing violations was one. Attempting to remove violations was a second. And then, like here, in their reply, they said you have to remove at least some violations. At the oral hearing, the board directly asked for their singular construction. They chose remove violations. They did not choose remove at least some violations. So this entire argument that's in their reply and that Katz was just addressing, that argument is waived in our view. It's also unsupported by the intrinsic evidence. Now, their argument is basically that this enforcing step comes with a big condition. Before you can do the enforcing step after you've created constraints, you need to go make a determination about whether any of these constraints are violated. The specification, figure one, figure two, none of them talk about the enforcing step as being conditioned in any way. In addition, IOM's assertion that the solution from the enforcing step couldn't be used to update the layout coordinates, which is required by a different step in claim one if there are no violations, is wrong. So IOM acknowledged in their brief at page 10 that the embodiment of the enforcing step in figure two places the layout objects to comply with the new local constraint distances while also optimizing other properties of the layout. And a specific example from the specification that they cited is minimizing the wire length in the layout. So what that means is if you created a new set of constraints and used the figure two embodiment, what it is going to do is come up with a new layout that complies with all those constraints, even though they weren't violated, but it is going to change the layout to minimize the wire length. So IOM's assertion that the enforcing step does not occur if there are no violations is unsupported by the intrinsic evidence. It's also directly refuted by the board's factual finding, again, in appendix 12, that enforcing has to be broad enough to cover the scenario where there are no violations. And it's also inconsistent with the testimony of their own expert that the board credited at appendix 2408 that you can enforce without violations. So for all these reasons, we respectfully submit that your honors should reject their attempt to limit enforcing to removing violations, and that if you do, that should be fatal. I also wanted to briefly discuss the board's construction. So again, it was unnecessary for the board to actually affirmatively construe the claims. RPX did not offer a late construction. In fact, it argued at appendix 2193 that IOM waived any other arguments, so it was sufficient for the board to reject the construction. But the board did go further, and essentially adopted the district court's construction with one clarification. Now, other than not being limited to removing violations, the board's construction doesn't materially differ from IOM's. Despite that, they curiously allege that the construction is wrong because it's too narrow, because it excludes the heuristic embodiment, but they don't ever explain how it could possibly help IOM if the board's construction was too narrow. And they're simply incorrect about this construction excluding the heuristic. The construction simply says that you find solutions after you generate these new local constraint distances, and that's exactly what the heuristic embodiment does. So whatever unstated meaning they're imparting to the board's construction to exclude a heuristic, certainly not what the board intended, because the board found that Allen meets their construction, and Allen only uses a heuristic. Unless your honors have any questions. Thank you, counsel. Thank you, your honors. Mr. Peterson, Zoe has a rebuttal phone. RPX argued below that LDR plus GDR is a minimum constraint. There is no dispute when Allen discloses that the space above the segment is less than that minimum constraint, Allen does nothing. It doesn't seek to enforce, it doesn't attempt to enforce, it doesn't partially enforce. It ignores it. Thus, under any reasonable construction of what it means to enforce something as a minimum constraint, which is the only type of constraint RPX identified, substantial evidence does not support the board's finding. Counsel, do you agree that if we affirm the previous case, this one is moot? I don't believe so, because procedurally, they're separate appeals. If they were combined into one appeal, I would agree. What difference does it make? There are no non-overlapping claims, right? Well, there are certain claims in the first one. But the prior appeal covers everything. Yes. And the board invalidated all the claims. Yes. And if we affirm the invalidation of all the claims, does it matter what's going on in this appeal? The claims are gone, you can't assert them. I understand that, but the problem would become if there are subsequent procedural appellate processes with respect to the first appeal, and then the second appeal goes down and becomes final. So then we've lost the patent while another appeal's still ahead. I don't understand what you mean. Do you mean if you're pursuing a bonk and things like that? Yeah. Well, then you have to do it in this case, too. I mean, if you think it's dismissed incorrectly as moot based on the other case, then you have to pursue appellate procedures here as well. Okay, I understand. You weigh your rights to anything. Okay, I just thought if we agreed that it would be moot, then we would weigh our rights to appeal a finding that it's moot. That was my concern. With respect to whether we weighed any arguments, our papers below expressly identified a construction and also said in no uncertain terms, and this is APPX 1688 and APPX 1689, under any reasonable construction of the claim language, Allen can't be said to enforce. We said it on both pages. That's where we cited the dictionary. So there's no waiver at issue here. With respect to the experts, on our reply on 11 through 12, our expert said numerous times that enforcing is a step of removing violations. Dr. Nagel, our expert, with respect to Claim 1, expressly agreed that that's the proper construction. Our expert also testified, I don't see how we can understand enforcing as not also removing violations. And all the quotes are on our reply 11 through 12. And although the board found the expert's testimony inconclusive, and this is on page 12 of its decision, if this court looks at the sum total of the expert's testimony, we submit that it should be weighed in favor of IYM. Thank you, counsel. The case is submitted. Thank you.